IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | N0. 14 CR 107-2 |
| BRAUNDII YOUNG, | ) | |
| | ) | Judge Harry D. Leinenweber |
| Defendant. | ) | |

## **DEFENDANT YOUNG'S SENTENCING MEMORANDUM**

Defendant Braundii Young, by her attorney, Phillip A. Turner, respectfully submits the following as her sentencing memorandum in this matter so that an appropriate sentence in light of Title 18 United States Code, Section 3553(a) is imposed.

Braundii Young pled guilty to one count of conspiracy to commit sex trafficking of minors pursuant to Title 18 United States Code, Sections 1594(c) and 1591(a) and agreed to cooperate with the government.

In **United States v. Booker,** 543 U.S. 220 (2005), the United States Supreme Court held that the mandatory application of the United States Sentencing Guidelines was unconstitutional and that the guidelines were advisory. The guidelines are only part of the analysis pursuant to Title 18 United States Code, Section 3553(a) which directs a sentencing court to

impose a sentence which is "sufficient, but not greater than necessary." In addition, the Seventh Circuit Court of Appeals has remarked that the departure methodology is obsolete in light of **Booker**. See, **United States v. Laufle,** 433 F.3d 981, 986 (7th Cir. 2006). The Seventh Circuit has recently expanded upon the analysis which is to be undertaken in applying the Section 3553 factors. In **United States v. Warner**, 14-1330 (7th Cir. July 10, 2015), the Seventh Circuit of Appeals reviewed the propriety of a sentence of probation for an extremely wealthy defendant who had evaded $5.6 million in United States taxes by hiding approximately $107 million in taxable income in secret Swiss bank accounts. The existence of the Swiss bank accounts and the funds contained in those accounts were hidden from the United States Department of Treasury, Internal Revenue Service. In addition to hiding the money, defendant Warner instructed his Swiss bankers not to send him any correspondence and to destroy all the account records after five years. When the United States government concluded an agreement with one of the Swiss banks which would have revealed defendant Warner's secret Swiss account, he transferred the funds to another Swiss bank and used a Liechtenstein shell entity to hide his ownership of the funds. Warner carried on this tax evasion scheme for approximately 12 years. When the United States Department of Justice began an investigation years later to investigate and prosecute this type

of offshore tax evasion, a grand jury subpoena was served on Warner for the records of his offshore banking records. Warner resisted and fought the grand jury subpoena, however, he was ultimately ordered by the courts to comply. **In re Special Feb. 2011-1 Grand Jury Subpoena Dates Sept. 12, 2011**, 691 F.3d 903, 909 (7th Cir. 2012), cert. denied, 133 S. Ct. 2338 (2013). Obviously, defendant Warner was very wealthy and had a privileged life with no explanation for his criminal conduct other than insatiable greed. In spite of Warner's long term premeditated and egregious conduct, the government filed only a one-count felony information charging Warner with willful tax evasion in violation of 26 U.S.C. Section 7201. Defendant Warner had no prior convictions and the resulting guidelines calculations yielded an advisory guideline range of 46 to 57 months imprisonment. At sentencing, the district court was appraised of the charitable causes to which defendant Warner had given money. The district court sentenced defendant Warner to two years' probation with community service and a fine of $100,000.00. The government appealed to the Seventh Circuit Court of Appeals arguing that the sentence was too lenient and that defendant Warner should have been incarcerated. The Seventh Circuit Court of Appeals rejected the government's arguments and affirmed the sentence of probation. In the course of affirming the sentence of probation, the Seventh Circuit Court of Appeals engaged in an

analysis of the significance of the sentencing guidelines and the sentencing factors set forth in Title 18 United States Code Section 3553. The Seventh Circuit initially noted that the crimes to which the defendant pled guilty did not expressly require the district court to send the defendant to prison. The Court of Appeals went on to state that in reviewing the Section 3553 factors "[a]fter **United States v. Booker**, however, the guidelines are merely advisory. 543 U.S. 220, 245 (2005)." The appellate court citing **Rita v. United States**, 551 U.S. 338, 351 (2007) and **Gall v. United States**, 552 U.S. 338, 351 (2007) indicated that the guidelines are to be considered, but not to be given much weight. "The open-endedness of the section 3553(a) factors leaves ample room for the court's discretion." Thus, the district court's imposition of a sentence of probation in the case of defendant Warner when all factors pointed to a sentence of incarceration was a proper exercise of the district court's discretion.

Reviewing Braundii Young's life and criminal conduct in light of the Seventh Circuit's analysis and application of the Section 3553 factors in **Warner**, presents compelling reasons to impose a sentence of 24 months incarceration. As in **Warner**, the crimes to which Braundii Young pled guilty do not expressly require a court to send her to prison. The crimes to which Braundii Young pled guilty are charged as "beginning no later than in or about

June 2012 and continuing until at least in or about July 2012." Braundii Young was born on December 23, 1991. Therefore, she was a 21 year old girl at the time she committed these crimes. She was not much older than the minor girls who are the victims in this matter. Braundii Young is the product of an environment where there is little moral force discouraging negative behavior and where it is customary for men to manipulate and abuse women. It is customary for fathers to abandon their children. Also, this is an environment where it is customary to begin smoking marijuana at an earlier age and to continue doing so every day of one's adult life. As the presentence investigation states, Braundii Young was abandoned by her father, began smoking marijuana several times every day at the age 13 and she began heavy consumption of alcohol at the age of 15. She has no criminal record and she was the victim of sexual abuse as a minor.

In this case, Braundii Young was manipulated by Mr. Misher. As this Court is aware, Mr. Misher who is older than Braundii Young obtained all of the minors involved in this matter. He gave them drugs, manipulated them and hit them. Mr. Misher took all of the money. Mr. Misher has been involved in the distribution of heroin and other drugs. As the presentence investigation indicates, Braundii Young has grown up without a father. She always had talent and potential, however, she was insecure and lacked self-

esteem. She believed that Mr. Misher loved her and she confided in him. She told him about her past sexual experiences with men and Mr. Misher told her that she would "have to make it up to him." An adolescent girl from her background became desperate to hold on to a man who appeared to love her in spite of her past. She believed that no decent man would ever want to marry her or have anything to do with her. Her low self-esteem made her willing to help Mr. Misher in his business as a pimp. She believed that he was the only man who would accept her. Mr. Misher being the manipulative creature that he is was more than willing to take advantage of anyone and any situation he found. Braundii Young was the perfect tool for all of his selfish aspirations. Braundii Young's insecurities were for Mr. Misher the equivalent of a heroin addict's addiction, something to be exploited for his gain. Mr. Misher could utilize her to become the successful pimp he wanted to become just as a heroin peddler can utilize the misery of a heroin addict to enrich himself. Obviously, Mr. Misher learned these lessons from his drug distribution business. Mr. Misher's manipulation continued after he and Braundii Young were arrested. Mr. Misher devised a scheme to send Braundii Young letters from his place of pretrial incarceration to Braundii Young while she was being detained at the Kane County Jail. Mr. Misher sent his letters to one of his associates who lived in the Kane County area. The associate took Mr. Misher's letters, put

them in an envelope with the associate's return address and sent them to Braundii Young. In the letters, Mr. Misher told Braundii Young that he loved her and instructed her that she should maintain a false story that they were unaware of the fact that the girls were minors. Braundii Young gave the letters to the government through her counsel as part of her cooperation.

As this Court can see from all of Braundii Young's submissions, she takes full responsibility for everything that she has done. She is repentant for what she has done and she apologizes to the other girls. Braundii Young has been incarcerated since her arrest on February 28, 2014. The vast majority of the her incarceration has been at the Kane County Jail where the conditions are much more harsh than the Metropolitan Correctional Center including being so far from Chicago that she was unable to see her family. However, during her incarceration, she has thought about her entire life and has become a different person than the person who existed on the streets of the west side of Chicago. Braundii Young is a person who will not commit crimes in the future. She will not commit crimes because she wants to do what is right, not because she is afraid of apprehension and incarceration. She has internalized that doing wrong acts hurts herself and others. She wants to help other young girls like herself and she is the best person to help those girls avoid the life style in which she was living. The court will read Braundii Young's character

letters. The letters tell a great deal about Braundii Young and give a glimpse into the environment from which Braundii Young originates

Braundii Young is profoundly sorry for her conduct. She knows that she now, at the beginning of her life, is a felon and as a result, she will be punished for the remainder of her life. As a felon, especially a felony involving sexual exploitation of minors, she will be forever excluded from many types of employment. She will never be free to live in any location she may choose since various states and counties have a myriad of broad statutes and ordinances banning individuals convicted of felonies involving minors from living in certain locations without consideration of the particular circumstances of the case. Braundii Young does not blame anyone but herself for her current predicament. She acknowledges the fact that she has damaged her future. Braundii Young acknowledges that all of this is her own fault. She only requests that the court look at her illegal conduct in the context of her entire life. Braundii Young is not a danger to the community. She has learned a painful lesson.

Special Agent Jonathan Williamson of the Federal Bureau of Investigation informed the probation officer that defendant Young was forth coming during proffer-protected interviews and she fully cooperated with the government throughout the prosecution of the case. It should be noted that shortly after

defendant Misher learned that Braundii Young would testify against him in a trial, defendant Misher pled guilty.

It is very unlikely that Braundii Young will ever in the future stand before any court as a defendant in a criminal matter. A sentence of 24 months is more than sufficient given the particular facts and circumstances of Braundii Young's offense and her young life. Such a sentence will not depreciate the seriousness of the offense since the word will go forth that Braundii Young with no criminal background, her role in the offense, her young age, her cooperation with the government in the prosecution of the instigator of this criminal scheme and her other good qualities, nevertheless, still served time in jail.

In light of the all of the circumstances of Braundii Young's life and criminal conduct as well as balancing the factors set forth in Title 18 United States Code Section 3553, defendant would respectfully suggest that a sentence of 24 months incarceration with a recommendation to the United States Bureau of Prisons that defendant be accepted into the residential drug

treatment program is sufficient.[1]

                                                    Respectfully submitted,
                                                    <u>Phillip A. Turner</u>_____
                                                    Phillip A. Turner
                                                    Attorney for defendant
                                                    115 South LaSalle Street
                                                    Suite 2600
                                                    Chicago, Illinois 60603
                                                    312-899-0009

---

[1] Defendant would respectfully request that the court withhold imposition of mandatory condition of supervised release number 4 and special conditions numbers 3 and the subparagraphs of number 9 until defendant has had an opportunity to discuss the conditions with the court.

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that in accordance with Fed.R.Civ.P.5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the following document:

**<u>DEFENDANT BRAUNDII YOUNG'S SENTENCING MEMORANDUM</u>**

was served pursuant to the district court's ECF system as to ECF filers.

        Respectfully submitted,

        <u>Phillip A. Turner</u>_____
        Phillip A. Turner
        Attorney for defendant
        115 South LaSalle Street
        Suite 2600
        Chicago, Illinois 60603
        312-899-0009